UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SHERIELEE FIGUEROA,

                              Plaintiff,

                                                      Case # 15-cv-6526-FPG

v.

                                                      DECISION AND ORDER

KK SUB II, LLC, et al.,

                              Defendants.

## INTRODUCTION

Plaintiff Sherielee Figueroa brings this action for sexual harassment and retaliation against Defendants KK Sub II, LLC, John Pharo, and Jennifer Hammel[1] pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000-e–2000e-17, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290–301. ECF No. 1, at 1. Plaintiff advances eight claims in total—six are directed at Defendant KK Sub II, one is directed at Defendant Pharo, and one is directed at Defendant Hammel. *Id.* at 7–11. Specifically, Plaintiff alleges that Defendant KK Sub II is responsible for (1) sexual harassment under Title VII; (2)–(3) retaliation under Title VII; (4) sexual harassment under the NYSHRL; and (5)–(6) retaliation under the NYSHRL. *Id.* at 7–10. Plaintiff also maintains that (7)–(8) Defendants Pharo and Hammel, respectively, are individually liable under the NYSHRL as aiders and abettors of the alleged discrimination. *Id.* at 10–11.

Plaintiff filed her Complaint on September 3, 2015, ECF No. 1, and Defendants answered on October 28, 2015, ECF Nos. 8–10. On April 21, 2017, Defendants KK Sub II and Pharo moved for summary judgment under Federal Rule of Civil Procedure 56(a). ECF No. 35. Defendant

---

[1] In the materials submitted to the Court, Defendant Hammel's name is, at many points, spelled "Hammell." The Court has adopted the spelling that appears in the case caption.

Hammel then filed her own Motion for Summary Judgment on April 25, 2017. ECF No. 36. For the reasons that follow, Defendants KK Sub II and Pharo's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART, and Defendant Hammel's Motion for Summary Judgment is DENIED.

## BACKGROUND[2]

On August 19, 2013, Defendant KK Sub II hired Plaintiff to work as Store Manager of the Subway located at 2200 Penfield Road in Penfield, New York. As District Manager and Human Resources liaison, Defendant Hammel was the one who conducted Plaintiff's interview and decided to hire Plaintiff. Approximately four to five months after Plaintiff started, Defendant Pharo became Plaintiff's Area Manager. As Area Manager, Defendant Pharo visited Plaintiff's store approximately once a week to drop off paychecks and assess the store's conditions in advance of monthly inspections.

By Plaintiff's account, Defendant Pharo engaged in inappropriate conduct on at least four occasions: First, on one occasion, Defendant Pharo called Plaintiff a "bitch" via text message. Second, Plaintiff alleges that, on another occasion, Defendant Pharo told her, "[Y]ou look like you're in a good mood, you must have gotten some last night." ECF No. 35-6, at 15; ECF No. 40-5, at 2. Third, when Defendant Pharo was once attempting to assist Plaintiff with the cap on a bottle of salad dressing, he remarked on how "slippery it is" and that "he always gets it in the right place." ECF No. 35-2, at 2; ECF No. 36-1, at 1; ECF No. 40-5, at 2. Specifically, Plaintiff maintains that Defendant Pharo said, "[I]t's so slippery, it's so wet, but don't worry, I always get

---

[2] The following facts are drawn from the Local Rule 56(a) statements, affidavits, deposition testimony, and documents submitted in connection with Defendants KK Sub II and Pharo's Motion for Summary Judgment (ECF No. 35), Defendant Hammel's Motion for Summary Judgment (ECF No. 36), and Plaintiff's response in opposition (ECF No. 40). All facts are undisputed unless noted otherwise.

it in, I never miss." ECF No. 35-6, at 15, 20; ECF No. 40-5, at 2. Fourth, on August 13, 2014,[3]

Plaintiff's bilateral nipple piercings became a point of conversation among coworkers, and

Defendant Pharo "expressed interest in observing Plaintiff's piercings." ECF No. 35-2, at 2; ECF

No. 36-1, at 1; ECF No. 40-5, at 1. According to Plaintiff, her coworkers brought up the piercings,

and—before she could respond—Defendant Pharo interjected to find out what she had gotten

pierced. Plaintiff maintains that, when Defendant Pharo learned that her nipples had been pierced,

he responded, "[O]h, I want to see. . . . [H]a, ha, no, just kidding, but, no, I really want to see."

ECF No. 35-6, at 23, 25.

    Later that day, Plaintiff sent Defendant Hammel two text messages asking to speak with

her. As of approximately August 15, 2014, Plaintiff had not received a response, so she called

Defendant Hammel. When they spoke, Plaintiff recounted what had happened, expressed her

discomfort at working with Defendant Pharo, and requested a sit-down conversation. On or about

August 25, 2014, Plaintiff sent Defendant Hammel a follow-up letter asking for that same meeting.

    The meeting Plaintiff requested did not occur until approximately September 25, 2014.

According to Sonia Quinones, one of Plaintiff's coworkers, Defendant Hammel sought updates on

Plaintiff's conduct in the interim as part of an investigation "to see if [Plaintiff] was going to mess

up." ECF No. 35-10, at 5–6; ECF No. 40-5, at 2. Prior to the meeting, and in preparation to file a

complaint with the New York State Division of Human Rights ("NYSDHR"), Plaintiff attempted

to solicit a statement from Ms. Quinones about the nipple-piercing incident, but Ms. Quinones

refused to confirm Plaintiff's account. When Defendants Hammel and Pharo learned of that

---

[3] In the Statement of Undisputed Facts attached to their Motion for Summary Judgment, Defendants KK Sub II and Pharo list the date of this incident as approximately August 13, 2013. ECF No. 35-2, at 2. Defendant Hammel and Plaintiff appear to agree with the date provided, ECF No. 36-1, at 1; ECF No. 40-5, at 1 (disagreeing with a different part)—however, the parties have also agreed that Defendant KK Sub II did not hire Plaintiff until approximately August 19, 2013, ECF No. 35-2, at 2; ECF No. 36-1, at 1; ECF No. 40-5, at 1. The date appears to come from Plaintiff's Complaint, which uses 2014 as the year of the nipple-piercing incident. ECF No. 1, at 4. Accordingly, the Court infers that 2013 was a typographical error and the parties intended to agree to the approximate date of August 13, 2014.

exchange, they solicited written statements from Ms. Quinones documenting what she claimed had transpired. Of the three additional coworkers who were present for the nipple-piercing incident, and whom Plaintiff asked for verification of her account, two provided Plaintiff with supporting statements.

Plaintiff maintains that, when the requested meeting eventually took place on or about September 25, 2014, Defendant Pharo was present, and Defendant Hammel ultimately informed her that "this is how it's going to have to be, you guys are both grown adults." ECF No. 35-6, at 29. Later that day, Plaintiff filed her complaint of sexual harassment with the NYSDHR. The next day, Plaintiff arrived at work to learn that she had been terminated. Defendants claim that Plaintiff was fired "for abusing her supervisory position to obtain false statements from employees." ECF No. 35-2, at 3; ECF No. 36-1, at 1.

Shortly after her termination, on or about October 2, 2014, Plaintiff filed her complaint of retaliation with the NYSDHR. Pursuant to an investigation, the NYSDHR issued determinations of probable cause for both of Plaintiff's complaints.[4] Both of the resulting cases before the NYSDHR were eventually dismissed for administrative convenience.[5]

---

[4] While Defendants KK Sub II and Pharo admitted the probable cause findings in their respective Answers, in Defendant Hammel's Answer, she maintained that the information "should be stricken as the comment[] therein [is an] inappropriate comment[] regarding . . . administrative proceedings." ECF No. 8, at 1. Administrative findings are not categorically excluded from consideration—to the contrary, Federal Rule of Evidence 803(8)(A)(iii) provides an express path for their admissibility. *See, e.g.*, *Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226, 232 (2d Cir. 2015). In addition, the Second Circuit has specifically instructed that "a finding of probable cause by an administrative agency, such as the EEOC, though not determinative, is admissible to help establish [the plaintiff's] prima facie case." *Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985), *aff'd*, 479 U.S. 60 (1986). That admissibility is not absolute, given the potential for prejudice; rather, admissibility is committed to the discretion of the district court. *See Paolitto v. John Brown E.&C., Inc.*, 151 F.3d 60, 65 (2d Cir. 1998). Here, however, the actual substance of the NYSDHR's determinations was not submitted to the Court—the Court only considers the NYSDHR's act of issuance for its effect in objectively justifying Plaintiff's perception of a Title VII violation. *See, e.g.*, *Summa v. Hofstra Univ.*, 708 F.3d 115, 127 (2d Cir. 2013).

[5] In her Answer, Defendant Hammel also argued that this inclusion should be similarly stricken. ECF No. 8, at 1. However, Defendant Hammel elected not to include a Statement of Undisputed Facts with her Motion for Summary Judgment, instead "adopt[ing] the contentions made [in Defendants KK Sub II and Pharo's Motion for Summary Judgment] as if fully set forth here." ECF No. 36-1, at 1.

## LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must take genuinely disputed facts in the light most favorable to the nonmoving party—here, Plaintiff. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)). If, based on the admissible evidence, a reasonable jury could return a verdict in favor of Plaintiff, summary judgment is not appropriate. *E.g.*, *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545–46 (2d Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)). In deciding whether to grant summary judgment, the Court must resolve "all permissible inferences and credibility questions . . . in favor of [Plaintiff]." *Id.*

## DISCUSSION

Title VII's principles guide the interpretation of the NYSHRL, rendering the claims brought under each "analytically identical." *Torres v. Pisano*, 116 F.3d 625, 629 n.1 (2d Cir. 1997); *see also Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006) ("Hostile work environment and retaliation claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII."). Accordingly, where parallel, Plaintiff's claims under Title VII and the NYSHRL are analyzed in tandem.

## I.    Sexual Harassment Under Title VII and the NYSHRL

Sexual harassment falls within the sex-based discrimination prohibited by Title VII and the NYSHRL. *See* 42 U.S.C. § 2000e-2(a)(1); N.Y. Exec. Law § 296(1)(a). It can be direct, via a quid pro quo relationship, or indirect, through the cultivation of a hostile work environment. *See Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 57 (2d Cir. 2004). Here, Plaintiff claims the

latter, alleging that Defendant Pharo's actions created a hostile work environment for which Defendant KK Sub II should be held responsible.

A prima facie case of a hostile work environment involves two showings: (1) that the complained-of conduct "was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment' "; and (2) that there are grounds to hold the employer liable for the harassing employee's conduct.[6] *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)).

## A.    Sufficiently Severe or Pervasive

To rise to actionable harassment, alleged misconduct must be either "sufficiently severe" or "sufficiently . . . pervasive." *E.g.*, *Dash v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 238 F. Supp. 3d 375, 385–86 (E.D.N.Y. 2017). Through the lens of summary judgment, then, the alleged misconduct must fall somewhere on the spectrum between "a single incident [that] was extraordinarily severe[] or . . . a series of incidents [that] were sufficiently continuous and concerted to have altered the conditions of [the] working environment." *Id.* (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000)). Accordingly, in the absence of extreme severity, isolated instances are typically not pervasive enough to constitute a hostile work environment. *Kaytor*, 609 F.3d at 547.

The assessment of hostility looks to the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

---

[6] A plaintiff alleging a sex-based hostile work environment must also demonstrate that the alleged harassment occurred because of her sex. *Tolbert*, 790 F.3d at 439. The Court need not reach this point, however—for the reasons that follow, a reasonable jury could not make the preliminary determination that a hostile work environment existed.

That measure involves both objective and subjective standards: the work environment must be objectively hostile or abusive as viewed by a reasonable person, but the plaintiff herself must also subjectively share that perception. *Id.* (citing *Harris*, 510 U.S. at 21–22).

In their Motion for Summary Judgment, Defendants KK Sub II and Pharo maintain that the three alleged instances of "essentially verbal behavior by a co-employee" over the course of Plaintiff's approximately thirteen-month employment do not rise to the level of a hostile work environment. ECF No. 35-3, at 3–10. In her response, Plaintiff does not appear to directly defend her allegations of harassment. *See* ECF No. 40-4. Rather, she focuses on her other claims, explaining that the hostile work environment claim "was not the only issue raised in the complaint" and conceding that "[t]he court may find the defendants' arguments sufficiently weighty to dismiss the causes of action alleging a hostile work environment, but the remaining causes of action must go to trial." *Id.* at 3, 9.

As for Defendant Hammel's position, the attorney affirmation attached to her Motion for Summary Judgment simply states that "Defendants KK Sub II, LLC and John Pharo filed a motion for summary judgment . . . . Defendant Hammel now joins that motion and adopts the contentions made therein as if fully set forth here." ECF No. 36-1, at 1. Her Motion for Summary Judgment does not contain a Statement of Undisputed Facts or Memorandum of Law, both of which are required by Local Rules of Civil Procedure 7(a)(2)(A) and 56(a)(1). The Affirmation in Support explains that it is offered "in lieu of a 'Statement of Undisputed Facts' " based on the conclusion that the motion "is not . . . complicated . . . and . . . said Statement is not necessary under the circumstances presented." ECF No. 36-1, at 1. That conclusion is incorrect: the Local Rules instruct that both filings "shall" be included—it is not at a party's discretion to simply elect

otherwise. *See* L.R. Civ. P. 7(a)(2)(A), 56(a)(1). Notwithstanding the various grounds for outright denial, the Court still reaches the merits of Defendant Hammel's Motion for Summary Judgment.

Based on its review of the record, the Court concludes that no reasonable jury could find that the alleged misconduct was objectively severe or pervasive. Plaintiff experienced—at most—four objectionable exchanges over the course of approximately thirteen months, which could not reasonably be characterized as pervasive. *See, e.g.*, *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) ("[I]ncidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.' ") (quoting *Perry*, 115 F.3d at 149)); *see also Paul v. Postgraduate Ctr. for Mental Health*, 97 F. Supp. 3d 141, 182–83 (E.D.N.Y. 2015) (collecting cases to agree that "five [occurrences] over the course of roughly fourteen months . . . [is] a rate of occurrence which courts [in the Second Circuit] have found to be infrequent"); *Spina v. Our Lady of Mercy Med. Ctr.*, No. 97 Civ.4661 RCC, 2003 WL 22434143, at *3 (S.D.N.Y. Oct. 3, 2003) (determining that conduct could not be construed as pervasive where the plaintiff alleged six instances of harassment over the course of approximately fifteen months); *Francis v. Chem. Banking Corp.*, 62 F. Supp. 2d 948, 959 (E.D.N.Y. 1999) (deeming four racial comments spanning "late 1993 or 1994" to "mid-March 1995" insufficient). Moreover, no reasonable jury could consider Defendant Pharo a constant source of interference in Plaintiff's workplace—per Plaintiff's testimony, he generally visited only once a week, and his visits were typically marked in minutes, not hours. ECF No. 35-6, at 14, 43.

In light of the lack of pervasiveness, a reasonable jury would need some counterbalance of severity to determine that a hostile work environment existed. *See, e.g.*, *Mormol*, 364 F.3d at 60 ("The harassment alleged . . . is not sufficiently severe to overcome its lack of pervasiveness."). However, none of the alleged incidents involved any physical threats, nor did they include any

actual touching—at most, Plaintiff says that Defendant Pharo "play[ed] with the bottle" of salad dressing while putting the top back on. ECF No. 35-6, at 21. While a greater degree of severity could be inferred from "obscene language or gestures," "the occasional vulgar banter, tinged with sexual innuendo" is typically not actionable. *See Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 177 (2d Cir. 2012) (quoting *Gallagher v. Delaney*, 139 F.3d 338, 347 (2d Cir. 1998), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)); *Wells-Williams v. Kingsboro Psychiatric Ctr.*, No. 03-CV-134 (CBA), 2007 WL 1011545, at *5 (E.D.N.Y. Mar. 30, 2007) (granting summary judgment for the defendant on a hostile work environment claim where a coworker allegedly "made obscene gestures and language using a cucumber and tomatoes," in addition to other verbal incidents and physical contact). Taken as true, the incidents alleged by Plaintiff represent the sort of sporadic, "offensive utterances" that—while distasteful—cannot reasonably be construed as objectively severe. *See, e.g.*, *Irons v. Bedford-Stuyvesant Cmty. Legal Servs.*, No. 13-CV-4457 (MKB), 2015 WL 5692860, at *15 (E.D.N.Y. Sept. 28, 2015) (collecting cases); *Monclova v. City of New York*, No. 12-CV-3187 (KAM)(RML), 2014 WL 4828813, at *11 (E.D.N.Y. Sept. 29, 2014) (same).

Even under the most favorable treatment for Plaintiff, no reasonable jury could that find the four verbal incidents rose to the level of a hostile work environment. Accordingly, summary judgment is GRANTED as to Plaintiff's Title VII and NYSHRL claims of sexual harassment against Defendant KK Sub II.

### B.    Attribution to Employer

Given the Court's determination that—even in the light most favorable to Plaintiff—the alleged misconduct fails to rise to the level of a hostile work environment, it need not reach the question of employer liability for this claim.

## II.    Retaliation Under Title VII and the NYSHRL

Title VII and the NYSHRL also prohibit discriminatory retaliation against an employee who complains of a purportedly unlawful practice. 42 U.S.C. § 2000e-3; N.Y. Exec. Law § 296(1)(e). Claims of retaliation are subject to the burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See also Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). Under the *McDonnell Douglas* framework, the plaintiff must first make out a prima facie case of retaliation. *See Zann Kwan*, 737 F.3d at 844. Notably, however, her burden is *de minimis*—the plaintiff need only provide admissible evidence from which a reasonable jury could infer a retaliatory motive. *E.g.*, *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010). Once the plaintiff makes out her prima facie case, she creates a presumption of retaliation, and the burden shifts to the defendant to provide "a legitimate non-retaliatory reason for the adverse employment action." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552–53 (2d Cir. 2010). If the defendant meets its burden of production, it defeats the presumption of retaliation created by the plaintiff's prima facie case. *Hicks*, 593 F.3d at 164. The burden then shifts back to the plaintiff to demonstrate that the defendant's proffered reason is merely pretextual. *Zann Kwan*, 737 F.3d at 845.

To make out a prima facie case of retaliation, a plaintiff must show that: (1) "she was engaged in a protected activity"; (2) the employer "was aware of this activity"; (3) the employer "took adverse action against her"; and (4) "a causal connection [existed] between the protected activity and the adverse action." *Valleriani v. Route 390 Nissan LLC*, 41 F. Supp. 3d 307, 318 (W.D.N.Y. 2014) (citing *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 177 (2d Cir. 2006)). Plaintiff seeks to hold Defendant KK Sub II liable on two apparent theories of retaliation: (1)

retaliatory harassment; and (2) retaliatory termination.[7] ECF No. 1, at 7–10. The Court addresses each theory separately within its discussion of the requisite *McDonnell Douglas* showings.

### A.      Plaintiff's Prima Facie Case

### 1.      Protected Activity

To satisfy the first element of retaliation, Plaintiff must show that she "engaged in a protected activity," which includes opposing a practice prohibited under Title VII. *E.g.*, *Valleriani*, 41 F. Supp. 3d at 318–19. Notably, the opposed conduct need not actually violate Title VII—instead, a plaintiff need only have "possessed a good faith, reasonable belief that the underlying employment practice was unlawful under that statute." *Summa v. Hofstra Univ.*, 708 F.3d 115, 126 (2d Cir. 2013) (quoting *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)). The requisite "good faith" belief must be subjectively held by the plaintiff, but the reasonableness of that belief is also objectively measured by looking at the totality of the circumstances. *See, e.g.*, *Galdieri-Ambrosini*, 136 F.3d at 292. In addition, that objective assessment must be taken "from the perspective of a reasonable[,] similarly situated person." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013).

### a.      Retaliatory Harassment and Retaliatory Termination

For both of Plaintiff's retaliation claims, the relevant protected activity would involve Plaintiff's opposition to her perceived hostile work environment. On the facts presented, a reasonable jury could find that Plaintiff subjectively believed that a hostile work environment existed. At her deposition, Plaintiff testified that she repeatedly told Defendant Hammel that she

---

[7] Plaintiff maintains that Defendant KK Sub II "retaliated against [her] because she complained of sexual harassment and/or sex discrimination . . . [by] creating a hostile work environment, demeaning [her,] and otherwise forcing her to work in continued physical proximity to [D]efendant Pharo." ECF No. 1, at 7, 9. The Court understands this first claim to be an allegation of retaliatory harassment. In addition, Plaintiff brings a claim for retaliatory termination, arguing that Defendant KK Sub II "terminated [her] employment because she complained of sexual harassment and/or sex discrimination. . . . [which] was retaliatory." ECF No. 1, at 8–9.

"felt uncomfortable" continuing to work with Defendant Pharo—she expressed that discomfort in her phone call to Defendant Hammel, her subsequent letter to Defendant Hammel, and her ultimate meeting with Defendants Hammel and Pharo. ECF No. 35-6, at 27–29. Plaintiff maintained that she was "upset," sharing her disbelief with her husband and finding herself "lost for words." *Id.* at 21, 25. Ms. Quinones also testified that, before Plaintiff asked her for a statement, Plaintiff informed her that she was "going to sue [Defendant Pharo]" following the nipple-piercing incident. ECF No. 35-10, at 6. Considered together, Plaintiff's discomfort, distress, and reference to legal action could allow a reasonable jury to infer that she subjectively believed she had experienced a hostile work environment.

With respect to the objective reasonableness of Plaintiff's belief, a jury would need to consider the perspective of a reasonable person in Plaintiff's shoes. While a single, sufficiently severe incident might prompt a reasonable belief of harassment, *see, e.g.*, *Summa*, 708 F.3d at 126, a number of courts in this circuit have determined that one "inappropriate comment" is typically not enough to justify a plaintiff's belief of a Title VII violation, *e.g.*, *Abeln v. Ultra Life Batteries*, No. 07-CV-6113L, 2009 WL 857497, at *2–3 (W.D.N.Y. Mar. 30, 2009) (collecting cases). Here, however, there were multiple exchanges between Plaintiff and Defendant Pharo—by Plaintiff's account, four distinct incidents in total. Accordingly, the question is whether a reasonable jury could conclude that those episodes, considered under the totality of the circumstances, formed an objectively reasonable justification for believing that a Title VII violation occurred.[8] This Court thinks so.

---

[8] The fact that Plaintiff's hostile work environment claim fails to survive summary judgment does not compel the finding that her subjective belief of a Title VII violation was unreasonable. Again, the issue for a jury would not be whether actionable harassment took place—it would be whether a reasonable person in Plaintiff's position, under the totality of the circumstances, could have believed that a Title VII violation occurred.

As a point of reference, in *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1179 (2d Cir. 1996), the Second Circuit discussed a jury's conclusion that a plaintiff's subjective belief of a hostile work environment was reasonable. It reasoned that the jury's determination was not "irrational[,] or . . . a conclusion that reasonable persons could not have reached" given the record, which contained evidence of two comments and the plaintiff's sense that she was not receiving due credit for her work. *Id.* at 1179–80.

Moreover, the NYSDHR issued a determination of probable cause for Plaintiff's pre-termination complaint of harassment, which could also signal that her belief was not entirely unreasonable. *See, e.g.*, *Summa*, 708 F.3d at 126–27 ("[The plaintiff's] belief that her . . . complaint to the [NYSDHR] constituted protected activity is evident . . . also based upon the conclusion of the NYSDHR itself, which determined that there was probable cause to proceed on [her] complaint. We conclude that it was objectively reasonable for [the plaintiff] to believe she had suffered from employment discrimination under Title VII . . . ."). Therefore, in the light most favorable to Plaintiff, a jury could conclude that her subjective belief was objectively reasonable.

Acting on that belief, Plaintiff must have engaged in activity that "opposed" the perceived harassment. Such "protected activity" is not limited to formal charges of discrimination—it also includes "informal protests," such as "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990); *see also, e.g.*, *Bossi v. Bank of Am.*, No. 3:14-CV-02301, 2016 WL 4446444, at *4 (M.D. Pa. Aug. 19, 2016) (finding that Plaintiff's "attempt[] to gather information for a complaint she intended on filing" could constitute a protected activity); *Marcus v. Barilla Am. NY,*

*Inc.*, 14 F. Supp. 3d 108, 115 (W.D.N.Y. 2014) (describing the scope of "protected activity" as "broad").

A reasonable jury could determine that Plaintiff "opposed" the perceived harassment in any one of three ways: (1) the phone call to Defendant Hammel, her District Manager and HR liaison; (2) the solicitation of supporting statements from her coworkers; or (3) the pre-termination filing of her harassment complaint with the NYSDHR.[9] Taken in the light most favorable to Plaintiff, each activity could be understood to sufficiently oppose her perceived hostile work environment, rendering the activity "protected."

### 2. Employer Awareness

#### a. Retaliatory Harassment and Retaliatory Termination

For an employer to retaliate against an employee, it must actually be aware of her engagement in a protected activity. With respect to the first protected activity—the phone call to Defendant Hammel—a reasonable jury could determine that Defendant KK Sub II was aware of the conversation. Plaintiff described the alleged harassment to Defendant Hammel in her capacity as Plaintiff's District Manager and HR contact, and Defendant Hammel discussed that conversation with Annie Aggarwal, one of four owners of Defendant KK Sub II. Accordingly, a reasonable jury could conclude that Defendant KK Sub II knew of Plaintiff's first protected activity prior to her termination.

For the second protected activity—Plaintiff's solicitation of supporting statements—a reasonable jury could also conclude that Defendant KK Sub II had knowledge of Plaintiff's efforts.

---

[9] While Plaintiff uses the call to Defendant Hammel as the relevant protected activity, the Court has determined that a reasonable jury could also consider the additional activities listed. Accordingly, the Court's analysis includes all three. *See, e.g.*, *Addo v. N.Y. Health & Hosps. Corp.*, No. 15-CV-8103 (RA), 2017 WL 4857593, at *8 (S.D.N.Y. Oct. 25, 2017) ("Although Plaintiff does not rely upon them in her opposition papers, the Court also considers whether various emails Plaintiff sent while employed [by Defendant] may qualify as protected activity bearing a causal relationship to the adverse employment action.").

In its own filings, Defendant KK Sub II maintains that it fired Plaintiff *based on* that activity: it asserts that, upon interviewing the coworker who refused to give a supporting statement, it "conclud[ed] that the Plaintiff had solicited a false statement[ and] . . . terminated her employment." ECF No. 35-1, at 8. Apart from any question of veracity, that statement signals that Defendant KK Sub II does not dispute its pre-termination knowledge of Plaintiff's efforts to secure supporting statements. Based on that recognition, a reasonable jury could conclude that Defendant KK Sub II knew of Plaintiff's second protected activity prior to her termination.

The third protected activity—Plaintiff's complaint of harassment with the NYSDHR— occurred approximately one day before her termination. Even taking all inferences in the light most favorable to Plaintiff, nothing appears to suggest that, within twenty-four hours, Defendant KK Sub II was notified of the formal NYSDHR complaint filed against it.

In sum, while a reasonable jury may not be able to find that Defendant KK Sub II had knowledge of Plaintiff's actual filing with the NYSDHR, it could find that Defendant KK Sub II had knowledge of either of the other protected activities.

### 3. Adverse Action

In the general context of retaliation, the element of adverse action requires only that "a reasonable employee would have found the challenged action materially adverse . . . mean[ing] it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Rwy. Co. v. White*, 548 U.S. 53, 68 (2006) (quoted by *Kessler v. Westchester Cty. Dep't of Social Servs.*, 461 F.3d 199, 207 (2d Cir. 2006)).

### a. Retaliatory Harassment

Some courts in this circuit have questioned whether the Supreme Court's decision in *White* also broadened the standard for claims of a retaliatory hostile work environment, or whether the

severe-and-pervasive standard for substantive hostile work environment claims still applies. *See, e.g.*, *Matthews v. Corning Inc.*, 77 F. Supp. 3d 275, 296–98 & 297 n.7 (W.D.N.Y. 2014) (flagging the issue and applying the standard from *White*). Under either of those standards, however, Plaintiff fails to satisfy the adverse-action element of her retaliatory harassment claim.

The adverse action alleged for Plaintiff's retaliatory harassment claim would be, by definition, the harassment she claims to have experienced in retaliation for engaging in a protected activity. To determine whether retaliatory harassment took place, a jury would need to use Plaintiff's known engagement in a protected activity as the marker at which to start assessing Defendants' conduct. Of the two activities a jury could construe as both (a) protected, and (b) known by Defendant KK Sub II, the earlier action was Plaintiff's phone call with Defendant Hammel, and the later was Plaintiff's solicitation of supporting statements. Notably, using the later activity as the starting point for assessing any harassment would narrow the timespan at issue, necessarily limiting the scope of conduct that could support Plaintiff's claim. Accordingly, the most favorable treatment for Plaintiff would be to use the phone call as the relevant protected activity.

The proper inquiry would thus focus on Defendants' actions *after* Plaintiff's phone conversation with Defendant Hammel. In support of her standalone claim of a hostile work environment, Plaintiff points to three main incidents, which allegedly took place in the following order: (1) Defendant Pharo calling her a "bitch"; (2) the conversation involving the bottle of salad dressing; and (3) the exchange regarding Plaintiff's nipple piercings. Plaintiff also claims that, at another point, Defendant Pharo told her that she seemed to be "in a good mood" and "must have gotten some last night." Taken together, these episodes formed the basis for Plaintiff's phone call to Defendant Hammel—as the topic of conversation, they necessarily predated that call. ECF No.

35-6, at 23 (describing the piercing incident as "the last incident that [she] could take"). The timing of those incidents thus precludes their consideration as evidence of *retaliatory* harassment.

In the absence of those episodes, no alleged acts remain to support Plaintiff's claim of a retaliatory hostile work environment. Plaintiff fails to offer anything specific regarding her claim of being generally "demean[ed]," and the only remaining allegation Plaintiff cites for support is that Defendants failed to reassign her or Defendant Pharo. Under the severe-or-pervasive standard applicable to standard claims of a hostile work environment, this narrow slice of activity is insufficient, particularly when *all* of Defendants' conduct—taken together—fails to constitute a hostile work environment.

Even using the broader standard from *White*, Plaintiff's own conduct defeats the requisite showing for the adverse-action element. Plaintiff filed her complaint of sexual harassment with the NYSDHR on approximately September 25, 2014, the day before her termination. ECF No. 35-2, at 3; ECF No. 40-5, at 2. Defendants' conduct thus did not dissuade Plaintiff from making a charge of discrimination because she did, in fact, file a harassment complaint with the NYSDHR after the time period relevant to her claim of retaliatory harassment—at its earliest, the weeks between Plaintiff's phone call with Defendant Hammel and Plaintiff's ultimate termination. *See Matthews*, 77 F. Supp. 3d at 298 ("By Plaintiff's own implied admission, the alleged harassment did not dissuade her from continuing to complain about alleged discrimination."). Under either standard, Plaintiff cannot make out the requisite prima facie case. For that reason, summary judgment is GRANTED as to Plaintiff's Title VII and NYSHRL claims of retaliatory harassment against Defendant KK Sub II.

### b.    Retaliatory Termination

In the absence of a later rehiring, the complained-of firing in a retaliatory termination claim can typically satisfy the adverse-action requirement. *See, e.g.*, *Goffe v. NYU Hosp. Ctr.*, 201 F. Supp. 3d 337, 352 (E.D.N.Y. 2016). Thus, a reasonable jury could consider Plaintiff's termination a materially adverse action, satisfying the third element of her prima facie case of retaliatory termination.

### 4.    Causal Connection

The Second Circuit has consistently held that the causal-connection requirement may be satisfied indirectly via proof of close timing between the protected activity and subsequent adverse action. *E.g.*, *Summa v. Hofstra Univ.*, 708 F.3d 115, 127–28 (2d Cir. 2013). It has not, however, drawn any "bright line" at which a connection becomes too temporally remote to be causal—that inferential assessment is left to the Court's judgment. *See id.* at 128.

### a.    Retaliatory Harassment

Because Plaintiff fails to satisfy the third element for her requisite prima facie showing of retaliatory harassment, the Court need not—and does not—address the fourth element for this claim.

### b.    Retaliatory Termination

Between the two protected activities arguably known to Defendant KK Sub II pre-termination, the earlier—the phone call to Defendant Hammel—still preceded Plaintiff's firing by only one month. The Second Circuit has reasoned that timing within the same range permits an inference of causality. *See, e.g.*, *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (inferring causation from a span of three weeks). Plaintiff's solicitation of supporting statements did not start until after her call to Defendant Hammel, making them even closer in time

to the adverse action. Moreover, the given reasons for Plaintiff's termination could signal clear causality with respect to Plaintiff's solicitation: Plaintiff was purportedly fired specifically because she solicited support for her harassment claim, notwithstanding Defendants' contentions that she did so improperly. Accordingly, a reasonable jury could infer a causal connection between either of those protected activities and Plaintiff's termination.

### B.       Defendant's Legitimate Reason

Per the *McDonnell Douglas* framework, a plaintiff's prima facie showing of retaliation shifts the burden to the defendant to offer a legitimate, non-retaliatory reason for the adverse action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). With respect to Plaintiff's retaliatory harassment claim, her failure to make out a prima facie case proves fatal, so the Court's analysis under *McDonnell Douglas* continues only for her claim of retaliatory termination.

Here, the claimed impropriety of Plaintiff's solicitations could constitute a legitimate, non-retaliatory reason for her firing. All three Defendants maintain that Plaintiff "was terminated for abusing her supervisory position to obtain false statements from employees." ECF No. 35-2, at 3; ECF No. 36-1, at 1. Specifically, Defendants point to the testimony of Ms. Quinones, who refused to provide Plaintiff with a supporting statement—Ms. Quinones agreed that she had declined Plaintiff's "efforts to have [her] make a false statement." ECF No. 35-1, at 8; ECF No. 35-10, at 12; ECF No. 36-1, at 1. Defendants claim that, pursuant to investigating Ms. Quinones' account, Plaintiff was terminated. ECF No. 35-1, at 8; ECF No. 36-1, at 1. Since Defendant KK Sub II's burden is only one of production, its claim of misconduct is satisfactory.

### C.       Plaintiff's Showing of Pretext

The *McDonnell Douglas* rubric provides that, once a defendant proffers a legitimate, non-retaliatory reason for the adverse employment action, the plaintiff can challenge it as pretextual.

*McDonnell Douglas*, 411 U.S. at 804. For a reasonable jury to find pretext, the plaintiff must show "that retaliation was a 'but-for' cause of the adverse action." [10] *Zann Kwan*, 737 F.3d at 845 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)). The phrase "a 'but-for' cause" is significant: it signals that retaliation need not have been the sole cause of the adverse action. *See id.* at 846. Rather, the plaintiff must demonstrate "only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.*

A reasonable jury may find but-for causation—and, thus, infer pretext—where the plaintiff points to "weaknesses, implausibilities, inconsistencies, or contradictions" in the defendant's given reason for the adverse action. *Id.*; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–48 (2000) (explaining that intentional discrimination may be inferred from the falsity of the employer's proffered reason). While disproving the defendant's explanation is not always dispositive, it is "circumstantial evidence that . . . may be quite persuasive." *Reeves*, 530 U.S. at 147–48. Additionally, analysis of causation in the pretext context is "particularly poorly suited to disposition by summary judgment, because it requires weighing of the disputed facts"— not just "a determination that there is no genuine dispute as to material fact." *Zann Kwan*, 737 F.3d at 846 n.5 (reasoning that the question of but-for causation should be resolved by a jury).

---

[10] The Second Circuit has not clarified whether *Nassar*'s but-for standard, set forth for Title VII retaliation claims, should also apply to retaliation claims brought under the NYSHRL. *See, e.g.*, *Zann Kwan*, 737 F.3d at 845 n.7 ("[W]e do not decide whether the NYSHRL claim is affected by *Nassar*, which by its terms dealt only with retaliation in violation of Title VII."); *Misas v. N. Shore-Long Island Jewish Health Sys.*, No. 14-CV-08787 (ALC) (DCF), 2017 WL 1535112, at *9 n.8 (S.D.N.Y. Apr. 27, 2017). However, a number of district courts in this circuit have used the *Nassar* standard for NYSHRL retaliation claims. *Misas*, 2017 WL 1535112, at *9 n.8 (noting district courts' application of *Nassar* to the NYSHRL); *see also, e.g.*, *DeLuca v. Sirius XM Radio, Inc.*, No. 12-cv-8239, 2017 WL 3671038, at *24 (S.D.N.Y. Aug. 7, 2017) (citing *Nassar* as governing "federal and state law"); *Adams v. Montefiore Med. Ctr.*, No. 15-cv-5082 (KBF), 2017 WL 4417695, at *4 (S.D.N.Y. Oct. 3, 2017) (citing *Nassar* and *Zann Kwan* as setting a but-for standard for NYSHRL retaliation claims); *Kassel v. City of Middletown*, No. 14-CV-8922 (KMK), 2017 WL 4350281, at *15 (S.D.N.Y. Sept. 28, 2017) (same). For the reasons that follow, the Court finds that Plaintiff could satisfy *Nassar*'s stricter, but-for showing. Accordingly, the Court would have also found that she could satisfy the lesser showing that the alleged retaliation was a "substantial or motivating factor" in her termination. *Zann Kwan*, 737 F.3d at 846 n.5 (quoting *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001)); *see also id.* at 845 n.7 (avoiding the question of whether *Nassar* applies to the NYSHRL "because the plaintiff's claims survive under the *Nassar* but-for standard").

Here, a reasonable jury could find that Defendants' proffered reason for terminating Plaintiff was merely pretext for retaliation. In her deposition testimony, Ms. Quinones confirmed that Defendant Hammel told her "to watch [Plaintiff] and try to see if she d[id] anything wrong." ECF No. 35-10, at 6. Ms. Quinones explained, "[Defendant Hammel] said she had an investigation against [Plaintiff]. . . . She was just trying to see if [Plaintiff] was going to mess up . . . . She was like just keep an eye on [Plaintiff] and let me know what she does or doesn't do . . . ." *Id.* By Ms. Quinones' account, this exchange took place when Defendant Hammel requested statements from her in support of Defendant Pharo, all of which necessarily occurred after Plaintiff's phone call creating the dispute. *See id.* at 5. A reasonable jury could construe Defendant Hammel's instruction as seeking cover for an otherwise-retaliatory firing. Moreover, the close timing between Plaintiff's phone call to Defendant Hammel and Plaintiff's termination could also contribute to a reasonable inference of pretext. *See, e.g.*, *Zann Kwan*, 737 F.3d at 846–47 ("[A] plaintiff may rely on evidence comprising her prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment at [the pretext] stage.").

Ms. Aggarwal's explanations could cast additional doubt on the legitimacy of Defendants' proffered reason for Plaintiff's termination. In her deposition, Ms. Aggarawal cited three reasons, taken together, for the firing: Plaintiff allegedly (1) "d[id] personal things on the clock"; (2) "discuss[ed] piercings . . . in [the] business environment"; and (3) "solicit[ed] false statements." ECF No. 35-8, at 24. Ms. Aggarwal also explained that "being unfaithful to the clock" by engaging in personal activities would be "an automatic reason" for termination. *Id.* Although an alternative, "automatic" ground for termination could jeopardize Plaintiff's requisite showing of but-for causation, Ms. Aggarwal testified that—in Plaintiff's case—the decision to terminate was "based off of" all three reasons. *Id.* At base, Plaintiff and Defendants dispute whether the solicited

statements were false: Plaintiff maintains that she sought confirmation of the piercing incident, while Defendants challenge the truthfulness of her account. If these factual disputes are construed in the light most favorable to Plaintiff, then Defendants' contention that the solicitations were the basis for Plaintiff's firing directly admits that Plaintiff's efforts to support her complaint were a— if not *the*—but-for cause of her termination.

Defendants' purported timeline of events could lend further support to this inference. In the Statement of Undisputed Facts submitted with their Motion for Summary Judgment, Defendants KK Sub II and Pharo maintain that the sit-down meeting between Defendant Hammel, Defendant Pharo, and Plaintiff occurred "on or about September 25, 2015 . . . after an internal investigation and inquiry was made into the allegations of . . . Plaintiff." ECF No. 35-2, at 2. In her Motion for Summary Judgment, Defendant Hammel agreed with Defendants Pharo and KK Sub II's account. ECF No. 36-1, at 1. While Plaintiff disputes whether any real inquiry into her claims ever took place, ECF No. 40-5, at 2, Defendants' own sequence of events undercuts their proffered rationale: pursuant to their claimed investigation, they would have already received the September 22, 2014 statements from Ms. Quinones flagging the alleged time-clock violations, soliciting of statements, and piercing discussion prior to the sit-down meeting, *see* ECF No. 40-2, at 2; ECF No. 40-3, at 2; *see also* ECF No. 35-8, at 24, 27. Nevertheless, Defendant Hammel and Ms. Aggarwal each testified that the purpose of that meeting—which the parties agree occurred "on or about" the day preceding Plaintiff's termination—was to "see if [Defendant Pharo and Plaintiff] could work together," not to terminate Plaintiff. ECF No. 35-9, at 22; *see also* ECF No. 35-8, at 26. As Plaintiff's counsel points out, a reasonable jury could find reconciling this alleged series of events "inherently confusing": if Defendants were already aware of their now-claimed grounds for Plaintiff's termination, a reasonable jury could question why they then conducted a

conciliatory, sit-down meeting for Plaintiff and Defendant Pharo "to see if they could work together" the day before Plaintiff was fired. *See* ECF No. 35-9, at 22; ECF No. 40-4, at 8.

Given the logical inconsistencies, temporal proximity, and instructions to "watch Plaintiff," a reasonable jury could infer that Defendants' proffered reason for Plaintiff's termination was pretextual. *See, e.g.*, *Zann Kwan*, 737 F.3d at 846–47 ("Based on the discrepancies between the EEOC statement and subsequent testimony, a reasonable juror could infer that the explanation given by the defendant was pretextual, and that, coupled with the textual proximity between the complaint and the termination, the September 3 complaint was a but-for cause of Kwan's termination."). Summary judgment is therefore DENIED as to Plaintiff's Title VII and NYSHRL claims of retaliatory termination against Defendant KK Sub II.

### III.  Aiding and Abetting Under the NYSHRL

While claims brought under Title VII and the NYSHRL are subject to near-identical analyses, the NYSHRL provides an avenue for individual liability not found in Title VII. *See* N.Y. Exec. Law § 296(6); *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106–07 n.10 (2d Cir. 2011). The only surviving NYSHRL claim for which to assess individual liability is Plaintiff's allegation of retaliatory termination, so the Court's analysis of Plaintiff's aiding-and-abetting claims is tailored accordingly.

The NYSHRL makes it "an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. Exec. Law § 296(6). A defendant need not exercise supervisory control to be held individually liable under this provision; rather, the relevant inquiry is whether the defendant "actually participate[d] in the conduct giving rise to [the] discrimination claim." *Rojas*, 660 F.3d at 106–07 n.10 (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on*

*other grounds by Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998)); *Feingold v. New York*, 366 F.3d 138, 157–58 (2d Cir. 2004) (same). Accordingly, the proper question here is whether a reasonable jury could determine that Defendants Hammel and Pharo "participated in the conduct" giving rise to Plaintiff's claim of retaliation.[11]

Taking all inferences and disputes of material fact in the light most favorable to Plaintiff, a reasonable jury could determine that Defendant Hammel actively contributed to the decision to fire Plaintiff. While Defendant Hammel's counsel argues that she "did not make the decision to terminate [Plaintiff]" and "merely relayed the decision of Ms. Aggarwal," ECF No. 36-1, at 2, parts of the record reflect otherwise. The attorney affirmation attached to Defendant Hammel's motion quotes testimony from Ms. Aggarwal, but—at that same deposition—Ms. Aggarwal called the decision to fire Plaintiff "a joint decision." ECF No. 35-8, at 24. Specifically, Ms. Aggarwal stated that she "made the decision to terminate [Plaintiff] and so had [Defendant Hammel]." *Id.* Ms. Aggarwal continued to reiterate that both she and Defendant Hammel had reached the same conclusion, leading her to explain, "[W]e thought it was best to terminate . . ." *Id.* at 24–25. Moreover, Defendant Hammel was the one who actually carried out Plaintiff's termination. ECF No. 35-6, at 34; ECF No. 35-7, at 12–13. Given Defendant Hammel's undisputed firing of Plaintiff and her contested role in the underlying decision, a reasonable jury could find that she "aided and

---

[11] Defendant Hammel's counsel cites *Patrowich v. Chemical Bank*, 63 N.Y.2d 541 (1984) (per curiam), to argue that the NYSHRL's aiding-and-abetting provision would only be applicable to Ms. Aggarwal. Per guidance from the Second Circuit, that conclusion is incorrect: *Patrowich* addressed whether a corporate employee could be held liable as an employer under the NYSHRL, *Patrowich*, 63 N.Y.2d at 542—not as an aider and abettor, *see, e.g.*, *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 53 (2d Cir. 2014) ("Under section 296, a person can be found individually liable for violations of the State's Human Rights law if either (1) he or she can be said to constitute the employer in his or her own individual capacity, *see Patrowich v. Chem. Bank*, 63 N.Y.2d 541, 473 N.E.2d 11, 13, 483 N.Y.S.2d 659, 661 (1984); *see also* N.Y. Exec. Law § 296(1)(a); *or* (2) if he or she 'aid[s], abet[s], incite [s] [sic], compel[s] or coerce[s] the discriminatory conduct.' N.Y. Exec. Law § 296(6)." (emphasis added)); *Johnson v. County of Nassau*, 82 F. Supp. 3d 533, 536 (E.D.N.Y. 2015) (deeming it "well-settled in the Second Circuit" that aiding-and-abetting liability can arise under § 296(6) from an employee's "actual[] participat[ion] in the conduct giving rise to a discrimination claim").

abetted" the retaliatory termination by Defendant KK Sub II. Accordingly, summary judgment is DENIED as to Plaintiff's NYSHRL claim of aiding and abetting against Defendant Hammel.

With respect to Defendant Pharo, a reasonable jury could determine that he also "aided and abetted" Plaintiff's termination. Plaintiff maintains that, on the morning of her termination, she opened the Penfield store. ECF No. 35-6, at 34. As she recalls, Defendants Pharo and Hammel arrived later—together—and told her to stop working, at which point, Defendant Hammel fired her. *Id.* At his deposition, Defendant Pharo maintained that, "when [he] showed up that day, [he] didn't know that [Plaintiff] was even getting fired." ECF No. 35-7, at 13. Nevertheless, he confirmed that Defendant Hammel arranged to meet in the Penfield Subway's parking lot, where she explained that Plaintiff was being fired that day. *Id.* at 12–13. Following that conversation, Defendant Pharo entered the Penfield store and was present when Defendant Hammel fired Plaintiff. *See* ECF No. 35-7, at 12. Defendant Pharo also testified that he showed up with Defendant Hammel that day "[b]ecause [Defendant Hammel] was terminating [Plaintiff], and I had to open the store." *Id.* at 12. Taking all inferences and factual disputes in the light most favorable to Plaintiff, a reasonable jury could conclude that Defendant Pharo entered the Penfield store that morning to knowingly assist Defendant Hammel with Plaintiff's termination. *See, e.g.*, *Pedi v. Gov't Emps. Ins. Co.*, No. 11 CV 5977(VB), 2012 WL 6918388, at *3 (S.D.N.Y. Dec. 10, 2012) (denying a motion for judgment on the pleadings where the plaintiff's direct supervisor was allegedly present on the phone for the termination); *Stevens v. New York*, 691 F. Supp. 2d 392, 401 (S.D.N.Y. 2009) (denying a motion to dismiss where one defendant allegedly "summoned" plaintiff to his firing and another was allegedly "present" for the firing, reasoning that the plaintiff claimed "they were at least in some way directly involved in his termination").

Moreover, a reasonable jury could also look to Defendant Pharo's involvement in the purported investigation against Plaintiff, which subsequently led to her firing. Ms. Quinones testified that, after Plaintiff asked her for a supporting statement, she notified Defendant Pharo of the request. ECF No. 35-10, at 7. Per Ms. Quinones' account, Defendant Pharo then called Defendant Hammel asking if "[he] need[ed] to get a lawyer, because [Plaintiff] want[ed] to sue [him]." *Id.* Defendant Pharo confirmed that he called Defendant Hammel after his conversation with Ms. Quinones, and Defendant Hammel instructed him to obtain written statements from Ms. Quinones. *Id.* at 12. Those statements then formed the claimed basis for Plaintiff's termination. Taking Plaintiff's factual allegations as true, a reasonable jury could determine that Defendant Pharo's involvement in procuring Ms. Quinones' statements helped to create the pretextual cover for her retaliatory firing—namely, Defendants' claim that Plaintiff was improperly obtaining false statements from her subordinates. *See, e.g.*, *Dunson v. Tri-Maint. & Contractors, Inc.*, 171 F. Supp. 2d 103, 115–16 (E.D.N.Y. 2001) (determining that a reasonable jury could find aiding and abetting where independent contractors conducted an investigation to allegedly help the employer develop a pretextual cover). Accordingly, summary judgment is DENIED as to Plaintiff's NYSHRL claim of aiding and abetting against Defendant Pharo.

## CONCLUSION

For the reasons stated, Defendants KK Sub II and Pharo's Motion for Summary Judgment (ECF No. 35) is GRANTED IN PART and DENIED IN PART, and Defendant Hammel's Motion for Summary Judgment (ECF No. 36) is DENIED.

Defendant KK Sub II's Motion for Summary Judgment as to Plaintiff's first, second, fourth, and fifth claims (sexual harassment and retaliatory harassment under Title VII and the NYSHRL) is GRANTED, and those claims are dismissed from this case. Defendant KK Sub II's Motion for Summary Judgment as to Plaintiff's third and sixth claims (retaliatory termination under Title VII and the NYSHRL) is DENIED.

Defendant Pharo's Motion for Summary Judgment as to Plaintiff's seventh claim (aiding and abetting under the NYSHRL) is DENIED with respect to Plaintiff's claim of retaliatory termination.

Defendant Hammel's Motion for Summary Judgment as to Plaintiff's eighth claim (aiding and abetting under the NYSHRL) is DENIED with respect to Plaintiff's claim of retaliatory termination.

IT IS SO ORDERED.

Dated: January 26, 2018
   Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court