UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

Sherielee Figueroa,                           **PLAINTIFF'S PRETRIAL**
                                              **SUBMISSIONS**
                        Plaintiff,

        v.
                                              Civil Action No.: 6:15-CV-6526

KK Sub II, LLC, John Pharo, Area Manager,
and Jennifer Hammel, District Manager,

                        Defendants.

_____

The following constitutes Plaintiff Sherielee Figueroa pre-trial submissions under Section

II of the Court's Pretrial Order dated February 21, 2018:

**I.      Voir Dire Preparation**

1.      Plaintiff has separately filed her requested *voir dire* questions

2.      The names of the attorneys trying this case for Ms. Figueroa are:

        a.      Anthony J. LaDuca, Esq. LaDuca Law Firm, 125 State Street, Suite 400,

                Rochester, New York.

3.      Plaintiff's full name and address is Sherielee Francis Figueroa.  Ms. Figueroa lives
in Rochester, New York.

**II**.     **Plaintiff's Prospective Witness List**

        a.      Sherielee Figueroa.   Plaintiff and former employee of Defendant.   She

resides in Rochester, New York.   The general subject matter that Ms. Figueroa will

generally testify about relate to, among others, her employment by Defendants, reporting

perceived hostile environment, reporting and investigation and the lack thereof, retaliation

she sustained, her termination, and the damages she sustained as a result of Defendant's unlawful conduct.

    b.    Jennifer Hammell.  Ms. Hammell is Defendants and Director of Operations of Defendant of Defendant KK Subway II.  Ms. Hammell resides in Buffalo, New York. The general subject matter that Ms. Hammell is expected to testify about concern Defendant's initial investigation of Plaintiff's hostile work allegations; her position and involvement in investigations; the investigation of Plaintiff; Plaintiff's employment history, terminations of Plaintiff.

    c.    Annie Aggarwal.  Ms. Aggarwal is Defendant part owner of KK Subway II and 30(b)(6) witness.   It is believed that Ms. Aggarwal resides in Texas.  The general subject matter that Ms. Aggarwal is expected to testify about concern matters, among others, relate to Defendants' operations; investigative procedures; investigation of Plaintiff's initial claims; the termination of Plaintiff; employee files; and disparate treatment between Plaintiff and Ms. Hammell.

    d.    Adriana Araujo.  Ms. Araujo is a former co-employee of Defendant KK Subway II.  Ms. Araujo resides in Rochester, New York.  The general subject matter that Ms. Araujo is expected to testify about concern matters, among others, related to Plaintiff's good faith basis for alleging hostile environment; Defendants' investigation of Plaintiff's initial claim and investigation prior to her termination.

    e.    John Pharo.  Mr. Pharo is a is Defendants and former Area Manager of KK Subway II.   It is believed that Mr. Pharo resides in Rochester, New York.  The general subject matter that Mr. Pharo is expected to testify about matters, among others, related to

Defendants' operations and his position as Area Manager; Plaintiff's allegation and Defendant's initial investigation of Plaintiff's hostile work allegations; the investigation leading to Plaintiff's termination; his involvement in both investigations; Plaintiff's offered promotion.

f.      Alyssa Mahoney.  Ms. Mahoney is a former co-employee of Defendant KK Subway II.   Ms. Mahoney resides in Rochester, New York.  The general subject matter that Ms. Mahoney is expected to testify about concern matters, among others, related to Plaintiff's good faith basis for alleging hostile environment; Defendants' investigation of Plaintiff's initial claim and investigation prior to her termination; emotional pain and suffering and mental anguish resulting from Plaintiff's termination.

g.      Olympia Santiago.  Ms. Santiago is the mother of Plaintiff.  Ms. Santiago resides in Rochester, New York.  The general subject matter that Ms. Santiago is expected to testify about concern matters, among others, related to Plaintiff's, emotional pain and suffering and mental anguish resulting from Plaintiff's termination.

h.      Dr. Faisal Shamsie, MD.  Dr. Shamsie was and continues to be Plaintiff's primary physician.  Dr. Shamsie resides in Rochester, New York.  The general subject matter that Dr. Shamsie is expected to testify about concern matters, among others, related to Plaintiff's emotional pain and suffering and mental anguish resulting from Plaintiff's termination.

i.      Pablo Figueroa.   Mr. Figueroa is the Plaintiff's husband.  Mr. Figueroa resides in Rochester, New York.  The general subject matter that Mr. Figueroa is expected

to testify about concern matters, among others, related to Plaintiff's emotional pain and suffering and mental anguish resulting from Plaintiff's termination.

## III.     Statement of Undisputed Facts and Issues

The plaintiff, Sherielee Figueroa, submits the following as part of the required pretrial statement.  While she will be filing and serving a motion in limine, she submits that the legal issues arising in this case are straightforward and the outcome will depend not on legal determinations but the factfinders' decisions regarding a few key questions of fact.

Those questions are narrowly focused, because a substantial number of relevant facts appear to be uncontested. The following list draws heavily from the list of uncontested facts which was submitted by defendant KK Sub II in connection with its motion for summary judgment. Significant additions or deviations from that list are accompanied by citations to depositions or documents.

An ambiguity of language in the complaint appears to have given rise to the misapprehension that the meeting involving the plaintiff, Jennifer Hammell, and John Pharo took place on September 25, 2014. Both counsel in the summary judgment proceeding assumed this was the case. After reviewing the depositions the plaintiff submits that the following chronology is accurate.

1. At all relevant times the plaintiff was a resident of the City of Rochester, County of Monroe, State of New York.

2. At all relevant times the defendant, KK Sub II, LLC, was a limited liability company with its principal place of business in the State of Texas but duly authorized to conduct business in the State of New York.

3. Defendant KK Sub II, LLC, operated Subway restaurants in the Rochester area at all relevant times and was and is an "employer" within the meaning of 42 USC § 2000e and Article 15 of the New York State Executive Law, and is subject to liability under these statutes.

4. At all relevant times defendant KK Sub II had more than 200 and less than 501 employees (HR EEO-4 Headcount Report).

5. At all relevant times defendant John Pharo was a resident of the County of Monroe and was an Area Manager with managerial and supervisory positions within KK Sub II.

6. At all relevant times defendant Jennifer Hammell was a resident of the county of Erie and was District Manager and liaison to Human Resources personnel within KK Sub II.

7. The plaintiff was hired by KK Sub II on or about August 19, 2013.

8. At all relevant times the plaintiff was employed by defendant KK Sub II as Store Manager for a Subway store located at 2200 Penfield Road, Penfield, New York.

9. At some point during the plaintiff's employment with KK Sub II she received a text message from Pharo in which she was addressed as "bitch."

10. At some point during the plaintiff's employment with KK Sub II Pharo demonstrated the placement of a rubber cap on a dressing bottle with commentary to the effect of, "Oh, it's so slippery, it's wet, but don't worry, I always get it in."

11. The plaintiff took this commentary, which was accompanied by salacious gestures, to be sexual in nature.

12. On August 13, 2013, the plaintiff was being asked by co-workers about recent piercings and Pharo asked if he could see them. One of the co-workers told him that the piercings were in the plaintiff's nipples.

13. As a result of this incident the plaintiff contacted defendant Hammell by text message on or about August 15, 2014.

14. The plaintiff then telephoned Hammell, who requested a statement from her (Hammell EBT, 48, Figueroa EBT, 101).

15. On August 25, 2014, the plaintiff made a written statement for Hammell which related non-specific communications issues with Pharo, set out that she felt Pharo created a hostile environment, and requested a meeting with him.

16. Although the nipple-piercing incident was not referenced in this statement, Hammell understood that this was to be the subject of the requested meeting (Hammell EBT, 50).

17. Hammell took no statements from employees or interviewed anyone in connection with this complaint.

18. On September 12, 2014, Hammell and Pharo met with the plaintiff and discussed the incident and the possible resolution of the plaintiff's complaints (Hammell DBT, 82).

19. In the opinion of Ms. Aggarwal the issues raised by the plaintiff had been resolved (Aggarwal EBT, 94).

20. After this meeting, the plaintiff sought to get statements from the employees who worked under her and who were present at the time of this incident.

21. Adriana Araujo signed a statement which supported the plaintiff's account (Araujo statement). .

22. Nobody from KK Sub II ever contacted Araujo about this (*id.*; Araujo EBT, 17-18).

23. On Friday, September 19, 2014, the plaintiff texted another employee, Sonia Quinones, requesting "a statement about what happen when John [Pharo] ask to see my boobs". The text message mistakenly identifies the date of the incident as August 28.

24. Quinones did not respond and on Saturday, September 20, the plaintiff sent her another text reading "You don't lobe [sic] me anymore" accompanied by two weeping emojis.

25. Quinones contacted Pharo, and on Sunday, September 21, Pharo prepared a statement for Annie Aggarwal, one of KK Sub II's owners with special responsibility for legal and accounting matters.

26.  Pharo stated that the plaintiff had asked Quinones "to write a false statement" and that Quinones thought that she would lose her job or her hours would be cut if she told anyone about this.

27. Pharo had called Hammell and told her the same things.

28. On Monday, September 22, at Hammell's request and with Pharo present, Quinones wrote out a statement disputing the plaintiff's account of the incident and saying that she "was told to basically make John look like the bad guy when he indeed is not."

29. She added that she was afraid that she might lose hours at her job because of "this truthful statement."

30. This document was transmitted to Hammell immediately (Pharo EBT, 39).

31. Hammell then asked Quinones to write another statement relating anything else that the plaintiff might have done that she felt was not right.

32. Hammell told her that she had an investigation against the plaintiff and was "trying to see if she was going to mess up".

33. Quinones then wrote a second statement alleging that the plaintiff had clocked hours when she was not working and went tanning while on the clock.

34. At the same time she texted the plaintiff and said, "I don't feel comfortable writing that statement about John. Don't ask me about it again please."

35. The plaintiff answered, "Okay that's fine."

36. Only Pharo's and Quinones's statements and the text messages were sent to Aggarwal.

37. The plaintiff was never shown these statements or asked about their contents.

38. Hammell spoke with other KK Sub II employees but took no statements from any of them.

39. On September 25, 2014, the plaintiff filed a complaint with the New York State Department of Human Rights on the same day alleging sexual harassment.  The same day, September 25, 2014, the plaintiff's employment was terminated.

40. Both Aggarwal and Hammell participated in this decision (Aggarwal EBT, 87).

41. The basis for this termination was the alleged abuse of the plaintiff's supervisory position to solicit false statements from fellow employees.

42. A determination of the NYSCHR dated March 23, 2015, found probable cause to support the plaintiff's complaint of sexual harassment and unlawful discriminatory practices.

43. On or about July 13, 2015, the plaintiff's cases with the DHR were dismissed for administrative convenience.

It is anticipated that the factual issues at trial will center on the nature of the requests for statements made by Ms. Figueroa, the extent of any investigation conducted by the defendants in response to Ms. Quinones's statements, the defendants' intentions in pursuing the issue which served as the stated reason for terminating the plaintiff's employment, and Jennifer Hammell's role in Defendant KK Sub's decision making process.

**IV.     Plaintiff's Proposed Exhibit List.**

Plaintiff has separately filed her Proposed Exhibit List.

**V.     Expert Testimony**

Plaintiff will call Dr. Faisal Shamsie, M.D.

**VI.     Plaintiff's Designation of Witness Testimony**

Plaintiff Sherielee Figueroa by and through her attorney and pursuant to the Pretrial Order dated February 21, 2018 (Dkt. No. 46), and Decision and Order dated January 26, 2018 (Dkt. No. 41), respectfully designate the following testimony of depositions for use at trial.

1.  Deposition of Sherielee Figueroa taken 11-3-2016

At the time of this filing, Plaintiff believe that Defendants will be available and present at the trial and thus does not intend to present evidence by deposition testimony.  It is possible, however, that Defendants may seek to impeach Plaintiff's

trial testimony with her prior, sworn deposition testimony. While Defendants do not believe that they have an obligation under this Court's Pre-trial Order to designate impeachment testimony, out of an abundance of caution, Plaintiffs designate the entire deposition of Sherielee Figueroa taken 11-3-2016 and 11-4-2016, for potential impeachment.

    2.   Deposition of Sonia Quinones taken 6-3-2015

       At the time of this filing, Plaintiffs do not intend to call Ms. Quinones as a witness but believe that Ms. Quinones will be available and may be called as a witness for Defendants. In this case, it is possible that Plaintiffs may seek to impeach Ms. Quinones's trial testimony with her prior, sworn deposition testimony. While Plaintiffs do not believe that they have an obligation under this Court's Pre-trial Order to designate impeachment testimony, out of an abundance of caution, Plaintiffs designate the entire deposition of Ms. Quinones taken November 18, 2016, for potential impeachment.

    3.   Deposition of Annie Aggarwal taken 11-3-2016

       At the time of this filing, the Plaintiff believes that Annie Aggarwal will be available and present at trial and thus does not intend to present evidence by deposition testimony.  In the event that circumstances change, however, and Ms. Aggarwal is not available and present at trial, Defendants designate the following deposition testimony for use at trial.

| PAGE | LINES |
|---|---|
| 8 | 3, 6-7, 11-20, 23 |
| 9 | 17-22 |
| 10 | 8-11, 12-17 |
| 15 | 2-4, 10, 17 |
| 17 | 14-17, 21-23 |
| 21 | 17 |
| 23 | 6-11 |
| 25 | 6-8 |
| 27 | 12-13, 16-20, 21-24 |
| 33 | 13-21 |
| 34 | 6-8 |
| 37 | 18-24 |
| 38 | 9-12, 17-21 |
| 40 | 14-18 |
| 41 | 23-25 |
| 42 | 2-9, 14-20 |
| 43 | 2-3 |
| 44 | 9-13 |
| 46 | 14-20 |
| 49 | 24-25 |
| 51 | 8-15, 18-25 |
| 52 | 2-3, 8-13, 15-17 |
| 53 | 12-16 |
| 54 | 3 |
| 63 | 14 |
| 65 | 21-25 |
| 66 | 8-15, 21-25 |
| 67 | 21-25 |
| 68 | 2, 9-10 |
| 72 | 12-20 |
| 73 | 8-11, 19-24 |
| 74 | 24-25 |
| 75 | 2-4 |
| 76 | 2-4, 19-25 |
| 77 | 14-20, 24-25 |
| 78 | 5-9, 8-19, 23-25 |
| 79 | 2-6, 23-25 |
| 81 | 5-10, 15-23 |
| 84 | 15-19 |
| 85 | 11-22 |
| 86 | 19-24 |
| 87 | 2-6, 12-18 |
| 88 | 8-11, 15-25 |
| 89 | 2-12, 23-25 |
| 90 | 4-6, 10-11, 20 |
| 91 | 2-3, 17-18 |
| 92 | 21-25 |
| 93 | 6-7 |
| 94 | 14-18 |

| PAGE | LINES |
|------|-------|
| 96 | 2-6, 19-25 |
| 97 | 8-13, 25 |
| 98 | 3 |
| 99 | 12-16 |
| 100 | 5-9, 19-25 |
| 104 | 12-15 |
| 105 | 12-15 |

4.   Deposition of John Pharo taken 11-18-2016

At the time of this filing, the Plaintiff believes that John Pharo will be available and present at trial and thus does not intend to present evidence by deposition testimony. In the event that circumstances change, however, and Ms. Pharo is not available and present at trial, Defendants designate the following deposition testimony for use at trial.

| PAGE | LINES |
|------|-------|
| 10 | 3-5 |
| 12 | 5, 13-15, 17-24 |
| 13 | 15-22, 24 |
| 14 | 6-9, 19-21 |
| 25 | 14-15, 20-24 |
| 27 | 7-25 |
| 32 | 3-4 |
| 36 | 19-20 |
| 37 | 23-25 |
| 38 | 2, 24-25 |
| 39 | 3-5, 9-10, 19-21 |
| 40 | 2-4 |
| 41 | 19-24 |
| 45 | 2-8 |

5.  Deposition of Jennifer Hammell taken 11-4-2016

At the time of this filing, the Plaintiff believes that Ms. Hammell will be available and present at trial and thus does not intend to present evidence by deposition testimony. In the event that circumstances change, however, and Ms. Hammell is not available and present at trial, Defendants designate the following deposition testimony for use at trial.

| PAGE | LINES |
|------|-------|
| 8 | 12-14 |
| 10 | 5-10, 18-21 |
| 11 | 4-5, 11-15, 18-21 |
| 12 | 4-11 |
| 13 | 12-15, 17-23 |
| 14 | 12-14, 19-22, 25 |
| 15 | 2-6, 13-25 |
| 16 | 6-12, 19-20 |
| 17 | 9-25 |
| 21 | 6-9, 25 |
| 23 | 2-25 |
| 25 | 4-13, 19-21 |
| 26 | 2-19 |
| 29 | 23-24 |
| 31 | 17-19, 22-25 |
| 32 | 2-5 |
| 33 | 11-13 |
| 35 | 10-19 |
| 36 | 3-7 |
| 38 | 6-8, 12-25 |
| 39 | 2, 18-19 |

| PAGE | LINES |
|------|-------|
| 43 | 3-8 |
| 45 | 5-8, 19-25 |
| 48 | 8-12, 16-25 |
| 49 | 2-5 |
| 50 | 3-9 |
| 51 | 8-11 |
| 52 | 2-14, 17-24 |
| 53 | 4-12 |
| 54 | 11-13, 21-25 |
| 55 | 14-16 |
| 57 | 12-19, 24-25 |
| 61 | 9-13 |
| 62 | 2-9, 17-18, 22-25 |
| 65 | 16-24 |
| 66 | 2-25 |
| 69 | 9-10, 19-25 |
| 71 | 19-22 |
| 72 | 10-12, 15-17, 19-21 |
| 73 | 5-7, 11-13 |
| 74 | 2-6, 10-11, 24-25 |
| 75 | 3, 5-10 |
| 76 | 6-8, 10-12 |
| 79 | 2-5, 7, 11-12 |
| 81 | 2-8 |
| 82 | 8-9, 20-21 |
| 83 | 3-13 |
| 84 | 7-9, 17-21 |
| 85 | 2-25 |
| 86 | 3, 11-16, 19-25 |
| 87 | 2-12 |
| 93 | 3-11, 22-24 |
| 96 | 14-15, 20-25 |
| 97 | 21 |
| 98 | 5-13 |
| 100 | 14-18 |
| 102 | 20-25 |
| 103 | 6-19, 22-24 |
| 108 | 3-10 |
| 109 | 14-20 |
| 110 | 10-14 |
| 111 | 3-8 |

6.   Deposition of Adriana Araujo taken 11-18-2016

At the time of this filing, the Plaintiff believes that Ms. Araujo will be available

and present at trial and thus does not intend to present evidence by deposition testimony.

In the event that circumstances change, however, and Ms. Araujo is not available and present at trial, Defendants designate the following deposition testimony for use at trial.

| PAGE | LINES |
|------|-------|
| 7 | 12 |
| 8 | 6-13, 15-16, 18-25 |
| 9 | 2-4, 5-10, 21-25 |
| 10 | 2-9, 15-18, 22-23 |
| 11 | 11-15, 17, 18-19, 23-25 |
| 12 | 11-14, 20, 22-24 |
| 13 | 4-9, 11-25 |
| 14 | 4-8, 20-25 |
| 16 | 17-24 |
| 17 | 14-20 |
| 18 | 2-3, 5-10 |
| 22 | 20-23 |
| 23 | 2-6, 10-15 |
| 24 | 19-20 |
| 27 | 17-20 |
| 28 | 2-11 |
| 32 | 16=17 |
| 34 | 4-11, 20025 |
| 35 | 2-5 |

Plaintiff designates the following deposition testimony for use at trial.

## VII.   Statement of Claims to be Pursued at Trial

Plaintiff Sherielee Figueroa claims damages, both compensatory and punitive, for the Defendants' violation of 42 USC § 2000e-3 in that the Defendants terminated her employment because of her participation in a protected activity, namely, seeking redress of what she reasonably believed to be workplace sexual harassment. Complaint, pars. 46-53. She also claims damages for the same acts for which a private right of action exists under section 296 of the New York State Executive Law. Complaint, pars. 58-65.

As against Defendant Jennifer Hammel the Plaintiff claims damages pursuant to New York State Executive Law § 296 (6) for aiding and abetting in this unlawful retaliation (Complaint, pars. 70-73).

Prior to trial the Plaintiff intends to withdraw her cause of action against Defendant John Pharo alleging that he aided and abetted in the decision to terminate her employment.

**VIII.    Voir Dire Questions**

Plaintiff has separately filed her Voir Dire Questions.


Dated:   Rochester, New York
        May 18, 2018

　　　　　　　　　　　　　　　 s/Anthony J. LaDuca
　　　　　　　　　　　　　　Anthony J. Laduca, Esq.
　　　　　　　　　　　　　　LADUCA LAW FIRM, LLP
　　　　　　　　　　　　　　125 State Street, Suite 400
　　　　　　　　　　　　　　Rochester, New York 14614
　　　　　　　　　　　　　　Telephone No.: (585) 454-1000
　　　　　　　　　　　　　　laduca@laducalawfirm.com